JOHN KLOSTERMAN
5615 SIDNEY ROAD
CINCINNATI, OH 45238
(513)250-2610
johncklosterman@gmail.com

FILED
RICHARD W. NAGEL
CLERK OF COURT

20 NOV -2 PM II: 34

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

## THE UNITED STATES FEDERAL COURT

## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN KLOSTERMAN, ET AL<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD BOYDSTON, KONZA LLC, TRI STATE ORGANIZATION INC. DBA, JOSEPH LENTINE<br><br>Defendants | Case No.: Number 1:20CV878<br><br>PLAINTIFF'S VERIFIED COMPLAINT FOR:<br>(1) BREACH OF FIDUCIARY DUTY<br>(2) DECLARATORY RELIEF<br>(3) INJUNCTIVE RELIEF<br>(4) CONSTRUCTIVE TRUST<br>(5) CORPORATE FRAUD |

## PLAINTIFF'S FIRST VERIFIED COMPLAINT

COMES NOW, the Plaintiff, JOHN KLOSTERMAN, who hereby submits his

Initial Verified Complaint for the following: Breach of Fiduciary Duty, Injunctive Relief,

Declaratory Relief, Enjoinment, and Fraud. It is as follows:

## PARTIES

1.        Plaintiff, JOHN KLOSTERMAN, (hereinafter "Plaintiff" or "KLOSTERMAN)

a male individual, who agreed to have the court-ordered Receiver/Konza LLC. hire a

management company to ready the properties said Plaintiff owns in preparation for an inevitable

sale in order to pay the outstanding judgment that the City of Cincinnati currently holds against

him.

2.        Defendant, RICHARD BOYDSTON, (hereinafter "BOYDSTON" or

"DEFENDANT #1"), a male individual, who serves as the court mandated "Receiver" in the current and ongoing litigation (Case No.: A1905588, *Court of Common Pleas, Hamilton County, Ohio)* Plaintiff is in with the City of Cincinnati.

3.    Defendant, KONZA LLC., a limited liability corporation, created by the Receiver, allegedly for business-based purposes.

4.    Defendant, TRI-STATE ORGANIZATION, INC. DBA JOE LENTINE, a corporation, retained by the Receiver aka BOYDSTON, to manage the properties of the Plaintiff beginning on March 1st, 2020, allegedly to prepare them for sale so said Plaintiff could pay the outstanding court-ordered judgment against him that was a result of the above mentioned, ongoing litigation.

## VENUES AND JURISDICTIONS

5.    Venue in the above stated court is proper for the injuries to the Plaintiff occurred within the County of Hamilton, Ohio, and the defendants regularly sought out to avail themselves of said subject jurisdiction for the purpose of obtaining additional clientele and/or providing services to existing clientele during the time in question.

6.    Subject matter in this action is properly heard in this court, as the action incorporates an amount in controversy of or above $10,000.

7.    At all times mentioned herein, the Ohio Code of Civil Procedure was in full force and effect, binding upon both Plaintiff and Defendants.

## FACTUAL ALLEGATIONS

8.    On or about March 1, 2020, Tri-State Organization Inc. (after being retained by the aforementioned court-ordered receiver, BOYDSTON) began managing Plaintiff's properties in what was supposed to be a relatively standard process which would eventually result in the sale

of said properties, in turn, allowing the Plaintiff to satisfy a judgment that the City of Cincinnati had obtained against him in case no. A1905588.

9.    Tri-State began collecting unpaid rents that month and for the months following would collect just under $9,000 on said monthly basis. These funds were meant to be used to pay recurring bills, mortgages, and the balance used to prepare buildings for sale. That amount was considered the budget.

10.    The stated agreement in a meeting with Tri-State, the Plaintiff and the Receiver, BOYDSTON, was that they would provide a team of skilled workers that would do the needed construction that would turn Plaintiff's rental flips ready for market in a relatively timely fashion. Three men and three months Plaintiff was told by Keith if funds were available, Plaintiff asked if nearly 9K a month would be sufficient. Yes was his reply..

11.    At the time March 1, 2020 said properties were turned over to the Receiver and Tri-State, they were tasked with "flipping" seven of Plaintiffs units.

12.    Plaintiff proceeded to meet with the President/Owner of Tri-State, JOE LENTINE, to devised a strategy to get the inventory turned over to maximize the properties rental income, But where was Keith? Plaintiff was told Keith had to finish another project and would be here soon.

13.    At the time, none of the current tenants were in need of repairs, emergency or otherwise. BOYDSTON declared all the rented properties in "B" grade condition.

14.    Plaintiff admits that the month of March, 2020, was a so-called "learning" month for Tri-State, but Plaintiff began to grow concerned once he received the second status report.

15.    Plaintiff questioned why he was paying for everything Tristate reported on his expense report., including all equipment used, office material, and many other items that should have already been owned by a rehab company before beginning work on a particular job. Even at that juncture, when Plaintiff inquired about the questionable expenditures, nothing was done to

resolve the issue and no questions were answered, complex, simple, or otherwise.

16.     Further, when the June, 2020 expenditures arrived, Plaintiff found these to be even more troubling…it was revealed through said report that Plaintiff was paying for all the equipment, including an old Ford f-250 truck that Tri-State was supposedly using to "operate" the business. Plaintiff alleges that the Receiver hired this company with the knowledge that they actually, had no tools, equipment, or otherwise to operate a proper construction/rehab company, and the Receiver nor the City of Cincinnati did anything at all to stop the illegal spending

17.     Plaintiff alleges that Defendant LENTINE's point man on this job, a gentleman only known as KEITH, was very qualified to do this job upon their initial meeting in February, but after that one and only initial meeting, Plaintiff never saw him again or the personnel he had promised to bring onto the job. Plaintiff contacted LENTINE multiple times about where Keith and the carpenters were, because nothing was getting done by the end of March.
Plaintiff asked for Keiths phone number. Lentine stated he would be here soon.  Plaintiff went to a job where Plaintiff had visited to review his work as well as another job. His work was great., but he was not present.

18.     Further, Plaintiff was personally in the area every day to watch the work being done and to inquire with the neighbors about the work being accomplished and the workers that they would come into contact with. The neighbors informed the Plaintiff that the "personnel" they were introduced to were employees from Defendant's Pizza operation called "Full Circle Pies" on North Bend Road, and not the experienced personnel as promised.

19.     Plaintiff alleges that the workmanship done on truly historic homes is poor, all Plaintiffs properties are on THE NATIONAL REGISTER OF HISTORIC PLACES, which the City of Cincinnati has failed to mention Sedamsville it in any of its historical promotions as other neighborhoods have benefited.  Plaintiff was very concerned to witness the extremely poor workmanship on buildings Plaintiff had saved from the wrecking ball years before. Plaintiff made a presentation to the City planning department 30 years ago noting the benefits of saving Sedamsville and predicted that people will come back to Cities. They didn't see it until OTR

happened. Then they wanted it. Plaintiff stood in the way just as plaintiff was to make his move of "Mt. Adams Light". Plaintiff alleges Receiver Boydston is the City of Cincinnati straw man to remove Plaintiff at all cost which included allowing Defendant Lentini free reign..

20.    After being presented with the 7th report form Tristate Org Inc that was filled with fraudulent statement and financial misuse. and never coming into contact with LENTINE's "team of experienced construction personnel", Plaintiff alleges that Defendant Lentine purposely planned to turn the rehab project into the failure that it has been since its inception, and blame Plaintiffs properties poor shape for its failure. The mis-mananagement on both the part of the Receiver and Tristate Org. Inc has been breathtaking, which has turned into an "unmitigated disaster" so Tristate and or the Receiver or both could benefit from a lower price for the properties that Lentine was now interested in as never before.

Defendant Lentine orchestrated the misuse of $60,000.00 of Plaintiff rental funds and nearly $60,000.00 in over budget funds. that Defendant Lentini paid into the project. He was not to spend over the 9K each month but every month he added to his amount owed. It is alleged that Defendant Lenteni used PPP funds from the Cares act to pay for much of the overages. How else would one get nearly $60,000.00, when Plaintiff bought ALL the equipment to run the business.

21.    Plaintiff alleges there was no budget used by Lentini.There was no plan as was

promised to the Receiver. But the receiver looked the other way because to date none has been

seen, and there was also no itemized documents stating how the labor cost was spent and what

was accomplished with it.  Plaintiff was promised 7  units completed and flipped in 3 months.

To date only one rental flip was completed without carpet on the first floor and  rented $400.00 or more

under market value and the tenant paid no deposit. 636 Delhi 1st floor was 95% complete and

636 2nd floor was 80% complete but was statand as "complete" in a past report in May 2020

without a furnace. The new furnace is listed on the September Managers report.  What has nearly

$120,000.00 done for me  or the City? The properties are in worse shape than when they started.

Which is unbelievable! In Plaintiffs entire 40 years in this business have  never witnessed waste on this scale.

22.     Plaintiff e-mailed the Receiver on multiple occasions stating his concerns with the Status reports and requesting the receipts to review, along with other pertinent questions he felt needed answered. Currently, these emails have gone unanswered.

Plaintiff asked in E-mails to enter the building to get items, no reply. Asked Lentine to allow me to pick up mail at 637 Steiner. No reply. Plaintiff further alleges that Defendant Lentine or his workers picked up and destroyed mail because I have answers from a federal suit that have not been answered that Plaintiff is expecting. Plaintiff has changed all mail from 5 addresses to be forwarded to Plaintiff home.

## FIRST CAUSE OF ACTION

### *(Breach of Fiduciary Duty)*

23.     Plaintiff incorporates by reference the allegations of Paragraphs 1 through 22, as though Fully set forth herein.

24.     As a Receiver and Agents of said Receiver, Defendants and each of them owe fiduciary duties of care, loyalty, and good faith to the Plaintiff. Defendants fiduciary duties include obligations to exercise good business judgment, to act prudently in the handling of the Plaintiff's monetary funds and other assets made available to them through said Plaintiff, to discharge their actions in good faith, to act in the best interest of the Plaintiff and any agents of the Plaintiff, and to put the interests of the Plaintiff above their own.

25.     Defendants breached their fiduciary duty of care by, among other things, routinely mismanaging the Plaintiff's assets almost immediately after BOYSTON or Konza was appointed as Receiver by the Court, and failing to have the people on the job, as was promised when we all met at Receiver office

26.     Defendant further breached his fiduciary duty of care through the following specific incidents that fell below the implied standard of care:

Receiver did not perform his due diligence in performing a background check on

the ownership of Tristate Organization Inc. (which Plaintiff asked for and has not received

as of the date of this filing).. It was found by Plaintiff that as of July 25, 2020 over 5

½ months after they were employed by Receiver that Tristate Organization Inc. had:

1. *No Contractors license required by the City of Cincinnati*

2. *No Insurance Bond to protect the work on Plaintiffs properties*

3. *No Liability insurance*

4. *No Workers Compensation*

5. *No Permits but did work before the effective date of the policy of 8/5/20*

6. *Violated OSHA regulations where no support walls were installed as required when digging below 5 ft at 628 Delhi sewer project. 2 workers quit because they refused to work in such a dangerous condition. OSHA has the complaint documented and the workers names that quit. Defendant Lentine told Plaintiff he was going to install walls when Plaintiff voiced concern. Walls were never installed continuing to endangering employees and the 3 contractors including Cincinnati MSD!*

7. *No Federal, State and Local deductions being withheld.*

   *The workers fall under the guidelines that they are "employees' ' and not 1099 sub-contractors as Receiver and Tristate fraudulently stated in applying for and covering 3 stated current "employees" with Erie Insurance company policy on 8/5/20 the effictive date of the policy. (Exhibit A) Certificate number CL208506310 POLICY NUMBER Q31-3021438,Q43-3050977,Q31-3021440,Q31-3021444. All these men are employees and are being paid in cash vs check which would verify true payment? A check should have been issued and the employee could sign it over for cash. Not even this simple accounting function was not followed, but was allowed by the Receiver and the City of Cincinnati. Nine employees were on the payroll in the September report which is included in this filing. (Exhibit B )*

8. *Plaintiffs alleges that Defendant Joe Lentine fraudulently used Plaintiffs office equipment, material and labor in the commission of a felony. It is alleged that he was*

the mastermind behind the unemployment fraud perpetrated with Angle Strunk.. Plaintiff alleges that the unemployment fraud was planned and executed at 621 Delhi where Plaintiff was paying Angel Strunk. Soon after Plaintiff found the damning information on the street near his office, he faxed a letter to the Ohio Job and Family Services.

Plaintiff alleges that Joe Lentine, suggested to Angel Strunk that if she was" laid off" due to the Covid-19 pandemic she would not only get the $200.00 from the D&D Advertising companies unemployment fund, even though she had quit, but she would receive $600.00 @ week under the PPP Cares act. until July 31,2020,( $7,200.00.) plus the earnings, about $400.00@ week that she was making while still working for Tristate Org. Inc., but being paid under the table like all his nine employees were being paid. $1,200.00 @ week for 3 months, and a continuing $200.00 plus the under the table money from Tri State Org. Inc. $600.00 tax free. Plaintiff was paying her wages through the Receiver.

So, given the extremely poor workmanship that had not changed for over 5 months and the gross misuse of funds under the guidance of the Receiver, and the City being unwilling to stop the fraudulent use of funds on Plaintiff properties by Defendant Lentine, Plaintiff got what was needed to hopefully remove Defendant Joe Lentine. and Tristate Org. Inc. as well as the Receiver for gross negligence , incompetence and fraud by both parties.

On September 16th at 12:20pm Plaintiff called and spoke with Donna at D &D Advertising for 9 minutes. In that conversation Plaintiff introduced himself, and told her that I had found papers that verified that Angel Strunk was tapping into their unemployment fund even though she was still working for Tristate Org. Donna was surprised that Angel would do such a thing and said she would call Angel Strunks mother.

On September 16, 2020 at 2:49 pm Plaintiff received a voice message from Donna from D & D stating that no funds had been deducted from their fund. Untrue. (Exhibit C)

On September 16, 2020 at 7:10 pm, Plaintiff received a call from Angel Strunk, Plaintiff let it go to Voicemail. Ms. Strunk told Plaintiff in no uncertain terms to mind my own business with regards to what she did with unemployment, and that if I wanted anything left of my properties, just leave it alone!

It is alleged that on the 17th, 2020 Defendant Lentine and Angel Strunk, knew the Plaintiff was on to them. So a plan was devised, and the fix was on. Angel Strunk

PLAINTIFF'S VERIFIED COMPLAINT FOR:(1) BREACH OF FIDUCIARY DUTY (2) DECLARATORY RELIEF(3)INJUNCTIVE RELIEF(4)CONSTRUCTIVE TRUST(5)CORPORATE FRAUD - 8

*filed the Police report. They hoped the fraud got no further than D & D. It had already.* **The fraud of the PPP Cares Act was reported to the Inspector General of the SBA. #20200721LC6 and to Ohio Job and Family Services fraud unit in a letter dated 8/11/202**

**Plaintiff was charged with stalking and menacing on 9/17/20 CRB/19488**

9. *No required permits were pulled for 3 hot water tank installations, new wiring at 659 Sedam Street, 2 new furnaces and demo permits that the plaintiff is aware of.*

27.    All these items, rules, regulations, and requirements in running a legitimate business were known by both the Receiver and the City of Cincinnati, because that is what Plaintiff was in trouble with the City for so long. But Defendant Joe Lentine said that "we can hide that" " no one will ever know". These violations are evidence of the total disregard of current company and work standards, and these alone would be enough to remove both entities and them personally, for the causes outlined here. However, more will be detailed at the bench trial. Upon the Discovery demand asked for this complaint.

28.    It was agreed by Receiver and Plaintiff that "Cash vs Accrual" accounting and Job Costing for each property would be used and  Plaintiff agreed to purchased QuickBooks and paid Angel Strunk to set the accounts up for its use. Tristate refused to use it when a trained person was on payroll to perform the task that would give meaningful reporting to both the Receiver, the City of Cincinnati and the  Plaintiff. The following Managers report for September(Exhibit B) that was dated by Receiver October 13,2020 but was postmarked October 24, 2020. It is always nearly a month before Plaintiff receives the report. What do 2 part time secretaries do all day askes the Plaintiff. .

The reports are worthless in determining where the money was spent, but the Receiver and the City of Cincinnati  did nothing to stop the misuse of funds and allowed Tristate to go "over budget" when there were no emergencies that required them to do so.

**Plaintiff further alleges the following points:**

- *Tristate never developed or delivered a plan of attack to the Receiver, the City or to the Plaintiff as he continued to promise to do so. Thus, a true shotgun approach was the order of the day, which resulted in many thousands of dollars lost as well as 6 projects that started and not completed because of no personnel with any skills ever present. Only the professionals who had to be called in to mop up the terrible and unsafe work performed by-experienced people. That cost many more thousands.*

- *Plaintiff told Defendant Lantene what was wrong with the sewer backing up at 628 Delhi, which had become worse. It was a tree root outside the house. No! Said Defendant Lentine. No job cost except where professionals were called in to prove my position. Plaintiff told Defendant what should be done to solve the problem at 1/10th of the cost spent this far. I suggested breaking the sidewalk and going under the wall and replacing the broken pipe caused by the tree next to the wall. It is estimated $5000.00 has been spent. It's still not repaired!*

- *Tristate has paid Delhi Lock and Key to change 26 or so locks on doors so a master key could be used for all units. Over $800.00 has been spent! Tristate has no one who can change a lock? Shocking! If one had changed locks 3 times, one could do it blindfolded! $800.00! This is more reason they were over budget. Spend it! It's not my money, and no one is stopping me!*

- *From day one Tristate began purchasing equipment that any construction/maintenance company would own to perform the necessary work required to perform the tasks at hand. Each report shows the line items for "tools" on a regular basis. The Plaintiff has requested from the Receiver via email for the many receipts that made up the expenses. None have been delivered as promised. (Exhibit D)*

- *Receiver Boydston viewed all occupied rentals and deemed that none needed any major repairs except for a few minor issues. The sewer pipe at 628 Delhi was the only issue that needed addressing. Tree roots continued to stop the free flow of wastewater. To date it has not been completed.*

- *Tristate violated with the full knowledge of the Receiver, the City of Cincinnati and Plaintiff the Ohio Covid19 order by Ohio Governor Pat Dewine, that all non- essential business not work to stop the spread of Covid-19 as evidence of the March and April reports to the Receiver, the City and the Plaintiff, that it was being violated when there were no immediate emergencies except 628 Delhi, which 7 months have passed and it is still incomplete.*

- *Receiver failed to pay required Mortgage payments for over 4 months after repeated requests by Plaintiff to do so. Plaintiff requested Warsaw Federal to send a Demand Letter to Receiver (Exhibit F ) In addition Plaintiff was charged over $1,900.00 in legal fees as a result of his mismanagement of the project. Plaintiff had not missed payments for years due to automatic withdrawal from Plaintiff's checking account. Quickbooks could have solved all the current problems, but Defendant Lentine did not want the controls so he could hide and blame Plaintiff if things went wrong.*

- *The Receiver was unwilling not to stop, look and see or he condoned the repeated misuse of labor directed to projects other than what the original mission was directed to perform.*

- *Plaintiff told Defendant Lentine that Plaintiff continued to receive all mail from the City which included, bill for inspections that were not done by Lentine, fines, Board up order for unsecured buildings etc. Plaintiff still to this day receives mail that is the responsibility of the Receiver. Plaintiff alleges that Defendant Lentine or his workers destroyed mail that was sent to 637 Steiner so Plaintiff could not answer any motions that the City had filed in the Federal case Plaintiff has against the City. After requesting entry on multiple occasions, Plaintiff had mail sent to his home.*

### They include:

1. Tri State mowed City of Cincinnati grass at the end of Sedam Street 4 times

2. Tri State mowed City of Cincinnati center island at Delhi and Fairbanks  3 times

3. Tri State employees trimmed and cleaned trash at the "closed" City steps at Delhi to Sedam Streets. Neighborhood people have witnessed both times and dates when employees were sitting and standing around from 15 minutes to over 2 hours smoking pot and cigarettes, talking and texting on their phones. With no supervision at all.

*(Plaintiff will present 10 neighborhood residents that will testify to the facts stated in item 3.)*

4. Tri State employees on a regular basis trimmed the street curb edging as well as picked   up trash on Delhi, Sedam and Steiner Streets at Plaintiff expense! Plaintiff complained to Defendant Lentini and Receiver. Nothing was done. It continued. and is on the most recent report.

5. Mowed tenant lawns at Plaintiffs expense, when they were required to do so as stated in their lease.

6. Receiver and the City of Cincinnati officials became aware that Tristate had painted the office building, which did not require painting and a Hamilton County Land Bank building at 669 Delhi at Plaintiff's labor and material expense, but did nothing about it. Hundreds misused.

**Tri State operated with impunity and used funds from Carte Blanch.**

29.  Tri-state stole material and equipment from Plaintiff so he would not have to purchase it .

Plaintiff was told that if Defendant used my inventory Plaintiff would be reimbursed.

Only one time after being caught red handed did Defendant pay for a refrigerator but was never paid the new one as promised. Lentine stoled a window air conditioner from 637 Steiner, wood from 637 Steiner, a $600 hot water tank and wood from 654 Steiner.All amounting to over $1,200.00. Plaintiff has pictures of all equipment in all units suspecting this would happen.  Mr Lentine is a Thief. Plaintiff was an eyewitness to 1 other theft and have photographic evidence of others.

30. Plaintiff alleges Tri-state and Receiver created a culture of fear, basically "Fall

in-line or be asked to leave". Plaintiff cites the following examples:

1.  *The Davis family was given a 30 day vacate order on or around the 15th of August 2020. They had placed a" work order" to address water in the kitchen at 659 Sedam, where they had resided for over 2 years. Nothing was done for weeks and mold began to grow, and the wall had to be removed, but never completed. They complained, but instead of completing the job, received the orders to vacate.*

2.  *Richard Tulbert, who resides at 700 Delhi and has for over 5 years was asked to vacate on the 15th of August. It was given to him in retribution for being a "whistleblower". He reported to Plaintiff that Tristate told him they were going to tear down the porch at his unit. He reported those facts to Plaintiff, and Plaintiff found after Plaintiff contacted the city Permit department that no permits, insurance etc were in place after nearly 5 months on the job. Three days later a vacate order was placed on his door. He subsequently showed the Receiver his lease, apparently the vacate order has been pulled. The Receiver purchased the Insurance. Will both the Defendants stop at anything in charging Plaintiff for everything?  My payment for insurance is on the Report . In clear view of the City of Cincinnati!*

31.  Both the Receiver and Tri State surely were aware that any notice for most Tenant issues MUST be given at the 1st of any month.  It is their ignorance of the Landlord/Tenant Laws.

32   Tristate, due to mismanagement, and the lack of professional workers:

1.  *Caused the entire building at 659 Sedam to be ordered Vacated by the City of Cincinnati Building Department.  Poor and unsafe work was performed without plumbing and*

*electrical permits causing eminent danger to the tenants in two of the units of a three family.*

2. *Joe Lentine, disregarded Building Department orders and moved a family into the 4 bedroom unit on the 2nd and 3rd floors. The tenant refused to pay rent and no deposit was received. Insurance claims will be filed due to the damage from poor workmanship and loss of income to the Receiver in order to perform the job at hand. Receiver was aware that permits were required because he viewed the ceiling drywall that required permits in order to complete the required work.*

The entire building is now losing over $1,900.00 each month.

33.Tristate completely dismantled the entire kitchen at 652 Steiner. There was nothing wrong with it. Plaintiff will show at trial photographic evidence of this claim.

This has caused the repairs necessary for it to be brought into rental service to thousands instead of several hundred. The Receiver failed to evict the tenant for "non-payment of rent" causing over $3,000.00 in rental loss. This is another example of Receivers lack of experience in the dynamics of the rental business. The building now looks abandoned from the street, with windows open and the front door with a board over where glass once was for over 4 months!.

The Receiver and Tri State, in the opinion of the Plaintiff, successfully degraded the properties so they can be purchased by Tri-state at a lower valuation.

- *Tristate rented 667 Delhi for $400.00 under market. (friends of Defendant Lentine) without it being complete as stated in an earlier report and the application and lease requested by the plaintiff has never been received. Plaintiff always performed criminal Background checks. However, when Joe Lentine himself is a Federal convicted Felon and two of his workers are also felons, and one threatened a past employee and Plaintiff with physical violence if he lost his job because of reportedly continually sleeping on the job.*

33. Receiver ordered Tristate to secure all 26 housing units. 8 units were for over 4 months, and after repeated statements by Plaintiff were still not secured by July. This most Basic fiduciary function by a Receiver was disregarded so as to degrade the properties by vandalism.

The "take care of the properties as if they were your own " a code of ethics for Receivers was grossly violated. October 29th, 2020, 685 Halsey has never been secured and the grass has never been mowed. Shocking. Just Shocking. Vandalism has occurred.

34. Plaintiff, who had for years contracted with Richard Torbert and his son to mow,trim and blow the grass off the sidewalk.on all lots and housing units that we were required to maintain. It was reported to me that it took 2 ½ days to perform all mowing trimming and blowing of cut grass. The shotgun approach has cost thousands more due to the workers goofing off. and 4 people have been seen mowing unowned yards and cleaning the neighborhood at Plaintiff expense. Nothing to do, no plans for the day. Go pick up trash was the order by Defendant Lentine as mentioned in statements on most all reports.

- *Plaintiff had complained to both Trustee and Receiver that all the lots and properties were not being cut on a regular basis and that some had never been cut. Plaintiff even posted 12- inch sticks on each property and even drove a worker by each at the beginning of the season. They were quickly disregarded. It became a shotgun approach due to the inexperienced workers. The person put in charge was a 16 or 17-year-old that had never cut grass. He was stoned most of the time when Plaintiff spoke with him while he was walking down the street after power blowing the entire street of Delhi or Sedam.*

35. Plaintiff, after repeated requests that yards and lots not being cut, Plaintiff went on-line and complained with Service Request (SR)issued to the Litter Patrol. Ten (10) were reported and was given numbers. Typically, in two or three days the patrol officer would be out to inspect the complaint and issue a ticket to the owner of the property. In 7 of the 10 they were known to be controlled by Tristate. No tickets were given and to my surprise took several weeks for them to be addressed by Tristate, even with 3-4 people that were involved in yard maintenance. But even at this date all have not been cut. However, Plaintiff did receive a $500.00 fine for tall grass on a property that was controlled by Tristate, but under the Name of Virginia Williamsburg. L.L.C., another fine was given to another private individual, and a third

was not given to a senior citizen in Delhi.

36. Plaintiff has been damaged by the aforementioned breaches of fiduciary duties alleged against the Defendants.

## SECOND CAUSE OF ACTION

### (DECLARATORY RELIEF)

37. Plaintiff incorporates by reference the allegations of Paragraphs 1 through 37, as though fully set forth herein.

38. Defendants are, and at all times herein mentioned, residents of the City of Cincinnati, County of Hamilton, State of Ohio.

39. Defendants are, and at all times herein mentioned, Individuals or Corporations organized and existing under the laws of the State of Ohio with principal offices located in the City of Cincinnati, County of Hamilton.

40. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

41. *Plaintiff agreed to the appointment of the Receiver under 2735.02 Ohio revised code.

* Receiver under Ohio Code 2735.03 did not perform his duties faithfully

*He hired a management company in name only... Tristate Organization Inc.

*They had no skilled employees, because they were transferred from a Pizza Operation.

*No Bond was shown until the effective date of 8/5/20202 which is a violation of Code 2735.03

PLAINTIFF'S VERIFIED COMPLAINT FOR:(1) BREACH OF FIDUCIARY DUTY (2) DECLARATORY RELIEF(3)INJUNCTIVE RELIEF(4)CONSTRUCTIVE TRUST(5)CORPORATE FRAUD - 15

*Failed to open and control rental funds in a bank account controlled by Receiver. He turned over the management of funds to Tristate, who grossly abused the use of them for their own gain.

* Failed in his duty to have Lentine show proof of the appropriate licenses, insurance, and exercising initial screening of the Management company Known as Tri-State Org Inc. ( no proof has been given on where Tri-state is incorporated.

*Receiver had knowledge that Lentine was a Convicted Federal Felon to run the management companyThe results shown in the suit prove that Defendant Lentine should have been fired as Plaintiff requested months ago..

*Failed to verify to Plaintiff verifiable photographic evidence that Tri state was destroying the properties he was sworn to protect and ready for sale. The opposite was done.

*Tristate has fraudulently padded expenses in order to acquire properties. In addition has damaged properties from their original condition in order to obtain a lower appraisal valuation. Receivers disinterest in the project by not viewing the work in process, shows a total disregard of the Plaintiffs properties.

*Failed to protect the properties of the Plaintiff. Eight (8) Properties were not secured for over 4 months.

*Allowed the misuse of Plaintiffs funds by allowing Tristate Organization Inc to be engaged to ready the properties for sale, with no tools, equipment, or qualified personnel. In addition, Tri State Organization Inc purposefully defrauded Ohio Job and Family Services by filing unemployment claim(s) on personnel that remained employed in order for the claimant to collect PPP funds of $600.00 in addition to the unemployment from past employers where claimant had quit. This being a Federal fraud violation. Receiver with the evidence of the violation, remains in place as the Management company. What documents did the Receiver review?

*Receiver failed to answer Plaintiffs concerns of Tristate Organization Inc Plaintiff told the Receiver that Plaintiff would fire Lentine in April. It was not done.

*Receiver and the City allowed fraudulent reports to stand with the court, when Plaintiff had shown photographic evidence that they were false and e-mails prove the concerns.

*Receivers failed to answer repeated requests about concerns about the management company, especially the applications of tenants, leases, and receipts of expenditures, which were promised, but were never received. A violation of Ohio Code 2735.05

"examination"

> *The Receiver is alleged to be working in a partial financial relationship with Tri State and is not pursuing a true and reliable purchaser.

> *2715.20 of the Ohio Civil Code, Plaintiff alleges Receiver failed to adhere to this by failing to take control of bills of the Plaintiff. Plaintiff continually received and forwarded bills and orders from the Cincinnati Building Department. They were not paid. (Exhibit E )

43. An actual controversy has arisen and now exists between plaintiff and defendant concerning their respective rights and duties in that plaintiff contends:

      a. Defendant did not comply with the applicable law regarding the fiduciary behavior of court-appointed Receivers and any agents in their employ

      b. Other issues to be shown according to proof.

44. Judicial declarations are necessary and appropriate at this time to enable parties to ascertain their rights and duties to each other.

## THIRD CAUSE OF ACTION
### INJUNCTIVE RELIEF

47. Plaintiff incorporates by reference all the preceding paragraphs aforementioned thus far in this complaint.

48. Beginning in April 2019 and a number of times since then, plaintiff has demanded that defendants stop their wrongful conduct described above. Defendants, and each of them, have refused and still refuse to refrain from their wrongful conduct.

49. Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to plaintiff in that he will continue to lose money and his

properties will continue to suffer .No winterization is underway and **Plaintiff has a Management company ready to perform the emergency work or tens of thousands of dollars could be lost in winter damages!**

50. Plaintiff has no adequate remedy at law for the injuries currently being suffered in that it will be impossible for plaintiff to determine the precise amount of damage which will suffer if defendants' conduct is not restrained. Also, Plaintiff will be forced to institute a multiplicity of suits to obtain adequate compensation for the aforementioned injuries.

51. As a result of defendants' wrongful conduct, Plaintiff has been damaged in the sum of $ 100,000. Plaintiff will be further damaged in like manner so long as defendants' conduct continues. The full amount of such damage is not now known to Plaintiff, and Plaintiff will amend this complaint to state such amount when the same becomes known to or on proof thereof. An Audit of the books and of the work performed thus far is recommended.

WHEREFORE, plaintiff pra judgment against defendant and each of them, as follows:

      1. For an order requiring defendants to show cause, if any they have, why they

      2. should not be enjoined as hereinafter set forth, during the pendency of this action;

2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining defendants, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them:

## FOURTH CAUSE OF ACTION
(CONSTRUCTIVE TRUST)

52. Plaintiffs reallege and incorporate by reference all the allegations of this Complaint with the same force and effect as if fully restated herein.

53. This is an action seeking equitable redress for all Defendant's illegal course of conduct in taking as its own the income generated by Plaintiffs properties that had been mandated by the referenced Hamilton County Court of Common Pleas to have Defendant, BOYDSTON, act as the Receiver of Plaintiff's affairs regarding said properties, thus forming a fiduciary relationship with the Plaintiff, meaning that it is his responsibility to act in Plaintiff and his properties best interest. This action also seeks the return of monies and other assets frivolously spent seized by all defendants in reference

54. A constructive trust is an equitable remedial device by which a court adjudges specific restitution of a received benefit. Constructive trusts may be imposed when a defendant has acquired legal title to property or money under such circumstances that he or she may not in good conscience retain the beneficial interest in the property, and in such a situation, equity converts the legal titleholder into a trustee holding the title for the benefit of those entitled to the ownership thereof.

55. A constructive trust should be imposed for the purpose of preventing unjust enrichment by the defendants for the loss of use and the value of the use of the land.

56. The Defendants will gain an unconscionable advantage in the retention of the income from the Plaintiffs' property if they do not pay the value of the use of this property. A constructive trust should be imposed to prevent unjust enrichment. It is against equitable principles to use the land without payment, and in this case, where a Receiver is present and utilized, it is necessary that all assets should be accounted for on a regular basis whenever they

are taken out of implemented trust.

57. Defendants have been enriched by not paying the value of the use of the land and using Plaintiff's assets in reckless and frivolous manners. Plaintiffs (and their heirs and assigns), the owners of the real property, have lost the value of the stream of income from the property. The value the defendants have gained from the unpaid use of the land is the same value plaintiffs have lost by nonpayment of this use.

### FIFTH CAUSE OF ACTION
*(CORPORATE FRAUD)*

58.     Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

59. On or aboutApril 2020, Defendants falsely and fraudulently represented to plaintiff that **"for insurance purposes"**, each of Plaintiff's properties (managed by the Defendants) needed to have  at least one fire extinguisher installed.

60. The representations made by the defendant were in fact false. The facts are alleged by the Plaintiff as follows: Plaintiff was billed for 25 fire extinguishers at a cost of over $1,000, However, Plaintiff received letters from Warsaw Federal dated 10/01/20 stating that there was no  insurance on the 3 properties they had mortgages on. Plaintiff emailed Boydston (Exhibit H ) and I asked them to call him as well. I was told by Lentine that there was to be an Umbrella

policy to cover all the properties. As of 10/29/20 no reply from him on her call or my Email.

**Warsaw Federal obtained Insurance coverage, and on 10/23/20 Plaintiffs bank statement shows that Plaintiff was charged $480.00 in legal fees and September loan payment was deducted when Receiver is responsible for both payment of mortgages and whatever the legal fees were.**

**Plaintiff was informed by Warsaw Federal that indeed that none of the properties were insured.**

60. When the defendant made these representations, he knew them to be false, and these representations were made by defendant with the intent to defraud and deceive plaintiff and with the intent to induce the plaintiff to act in the manner herein alleged. Also, at the time defendant made the promises to the plaintiff, the defendant had no intention of performing them.

61. Plaintiff, at the time this promise was made and at the time plaintiff took the actions herein alleged, was ignorant of defendant's secret intention not to perform and plaintiff could not, in the exercise of reasonable diligence, have discovered the defendant's secret intention.

In reliance on these representations, Plaintiff was induced to and did allow work to be carried out in his properties without requesting an injunction from the Court. Had plaintiff knowing the actual facts, he would not have taken such action. Plaintiff's reliance on defendant's representations was justified because of the fiduciary duty the Receiver (BOYDSTON) employed, ordered by the Court, which in basic terms mandated him to protect Plaintiff's properties as if they were his own.

Further, Plaintiff gave office space to Joe Lentine together with Tristate Organization Inc to use for free. Plaintiff granted the office based on the understanding that Keith, his supervisor, would have a place to meet with his workers. He (Keith) was never seen again. In addition, the

lease called for Defendant to pay all expenses and utilities. Plaintiff has been billed for all utilities and expenses incurred while in the office space. Clearly, the office space was leased under fraudulent pretenses. Plaintiff demands immediate possession of the office space and Defendant to reimburse Plaintiff for all expenses.

62.        Plaintiff also asserts the following: In Tristates Expense report Mr. Lentine stated in an "Addendum to reports for Tristate Organization Inc." the following:

Boydston:

*"The truck purchased for the receivership in March has a total purchase price of $5,500.00. As of July 8,2020, Joseph Lentine has paid a total of $3,000.00 towards the purchase price and there is a remaining balance of $2,500.00"*

Plaintiff called the Hamilton County Title Bureau and found that in fact the truck **was already owned by Tristate Organization Inc and was in fact it was a gift  with $0. paid in taxes in 2017 Lentine  repaired the truck at Plaintiffs expense with parts from AutoZone and then sold it to the "Receiver" He was the seller not the purchaser as he fraudulently contends. In addition, licenses were purchased, but no title** information has been seen by the plaintiff showing the age of the vehicle, mileage, etc. So as to assess the true value of the truck that was fraudulently sold to Receiver with Plaintiffs funds

63. As a proximate result of defendant's fraud and deceit and the facts herein alleged, plaintiff has been damaged in the sum of $150,000.00.

64. In doing the acts herein alleged, defendant acted with oppression, fraud, and malice, and

plaintiff is entitled to punitive damages in the sum of $250,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff pray judgment against defendant and each of them, as follows:

1. For general damages in the sum of $ 200,000.00

2. For punitive damages in the sum of $300,000.00

3. For costs of suit incurred herein;

4. For injunctive and declaratory relief

5. For such other and further relief as the court may deem proper.

DATED THIS 2nd DAY OF NOVEMBER, 2020

PRO-SE LITIGANT, JOHN KLOSTERMAN
5615 SIDNEY ROAD
CINCINNATI, OH 45238
(513)250-2610
worldwidemobilc@hotmail.com



Warsaw Federal Savings and Loan, ISAOA
7800 E Kemper Rd
Suite 140
Cincinnati, OH 45249

4226H1R1
09/01/2020

John Klosterman
667 Delhi
Cincinnati, OH 45204

Loan: XXXXXX5188

Subject: **Please update insurance information for** 639 Steiner

John Klosterman:

Because we did not have ~~evidence that you~~ had ~~hazard insurance on the property~~ listed above, we bought insurance on your property and added the cost to your mortgage loan account.

The policy that we bought expired. **Because hazard insurance is required on your property, we intend to maintain insurance on your property by renewing or replacing the insurance we bought.**

The insurance we buy:

- **Will cost an estimated $382.20 annually, which may be significantly more expensive than insurance you can buy yourself.**
- **May not provide as much coverage as an insurance policy you buy yourself.**

If you buy hazard insurance, you should immediately fax or email proof of insurance for your property.

Fax: (855) 522-1870
Email: mortgageservicing@warsawfederal.com

Proof of insurance must be provided in written form. We will accept either a copy of your insurance policy or a copy of your policy declaration page. Please make sure that the document(s) provided to us include the following required pieces of information:

- Insurance Agent (or Insurance Carrier) name and phone number
- Insured property address/description
- Coverage amount of at least $40,000.00
- Policy Period beginning on or after 09/01/20
- Mortgagee clause for: Warsaw Federal Savings and Loan, ISAOA / ATIMA
7800 E Kemper Rd
Suite 140
Cincinnati, OH 45249

If you have any questions, please contact us at (513) 244-8528 or (877) 308-9371.

Sincerely,

Loan Servicing Department
Phone: (513) 244-8528 or (877) 308-9371

_ef hilit A_

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
8/5/2020

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Steve Dabbelt | | |
|---|---|---|---|
| Dabbelt Insurance Agency LLC | PHONE (A/C, No, Ext): (513) 451-8050 | | FAX (A/C, No): (513) 451-0033 |
| 5932 Glenway Avenue | E-MAIL ADDRESS: | | |
| Cincinnati OH 45238 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A: Erie Insurance Co. | | 26271 |
| INSURED | INSURER B: | | |
| Harry Tyo | INSURER C: | | |
| | INSURER D: | | |
| 3633 Puhlman Avenue | INSURER E: | | |
| Cincinnati OH 45211 | INSURER F: | | |

## COVERAGES CERTIFICATE NUMBER: CL208506310 REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | COMMERCIAL GENERAL LIABILITY | X | | Q31-3021438 | 07/30/2020 | 07/30/2021 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE [X] OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | [X] POLICY [ ] PRO-JECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS / SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS / NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB / OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB / CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED / RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | | | PER STATUTE / OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Tri-State Organization Inc. is listed as Additional Insured

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Tri-State Organization Inc. | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| 671 Delhi Avenue | |
| Cincinnati, OH 45204 | AUTHORIZED REPRESENTATIVE |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01) The ACORD name and logo are registered marks of ACORD

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, | : | Case No. A1905588 |
| | : | (Judge Ethna M. Cooper) |
| Plaintiff, | : | (Magistrate Anita P. Berding) |
| | : | |
| v. | : | |
| | : | RECEIVER'S SEVENTH REPORT |
| JOHN KLOSTERMAN, et al., | : | |
| | : | |
| Defendants. | : | |

Comes now Konza, LLC through its Manager Richard Boydston as receiver appointed by order entered February 14, 2020 and for its report for the period September 1 through 30, 2020 says as follows.

Operations. The report for September to the Receiver from TriState Organization, Inc. is attached marked Exhibit A.

Receiver Fees and Expenses. The Receiver has incurred fees for work as receiver and also for legal counsel and continues to accrue them pending improvement of cash flow from operations and or funding of the receivership. An itemization of the fees and expenses will be submitted for approval by the Court prior to any payment to the Receiver.

Respectfully submitted,

*/s/ Richard Boydston*
Richard Boydston (0022360)
Counsel for Konza, LLC, Receiver
Dentons Bingham Greenebaum LLP
255 East 5th Street #2350
Cincinnati, Ohio 45202-4728
513.455.7663
513.762.7963 (fax)
richard.boydston@dentons.com

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was served on each of the following by email on October 13, 2020.

Jacklyn Gonzales Martin, Esq.
Tina Woods, Esq.
Counsel for Plaintiff
  City of Cincinnati
214 City Hall
801 Plum Street
Cincinnati, OH 45202
jacklyn.martin@cincinnati-oh.gov
tina.woods@cincinnati-oh.gov

Christian D. Donovan, Esq.
Counsel for Defendant
  Warsaw Federal Savings and Loan
  Association aka Warsaw FS & LA
Luper Neidenthal & Logan
1160 Dublin Road, Suite 400
Columbus, OH 43215-1052
cdonovan@LNLattorneys.com

Lawrence C. Baron, Esq.
Counsel for Defendants Hamilton County,
  Hamilton County Clerk of Courts, and
  Hamilton County Auditor and Treasurer
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, OH 45202
larry.baron@hcpros.org

Amy K. Kaufman, Esq.
Counsel for Defendants State of Ohio,
  Department of Taxation and
  Department of Job & Family Services
Dave Yost, Attorney General of Ohio
Collections Enforcement
150 East Gay Street
Columbus, OH 43215-3130
amy.kaufman@ohioattorneygeneral.gov

Teresa Perkins, Esq.
Counsel for Defendant Hamilton County Child
  Support Enforcement Agency
CSEA 222 E. Central Parkway
6NW711
Cincinnati, OH 45202
perkit02@JFS.HAMILTON-CO.org

Matthew J. Horwitz, Esq.
Counsel for Defendant United States of
  America
United States Attorney's Office
221 E. 4th St., Suite 400
Cincinnati, OH 45202
usaohs.state.foreclosure@usdoj.gov

Matthew T. Fitzsimmons Esq.
Counsel for Dawnte Harding
Legal Aid
215 East 9th Street
Cincinnati, OH 45202
mfitzsimmons@lascinti.org

I further certify that the foregoing was served by ordinary United States mail, first class postage prepaid, on Defendant John Klosterman, 5615 Sidney Road, Cincinnati, OH 45238 on October 13, 2020.

/s/ Richard Boydston

_[handwritten: not Recived until 24th. Post marked 24th.]_

# EXHIBIT A

## KLOSTERMAN PROPERTIES          SEPTEMBER 2020 REPORT

| September Rent Roll | Due | Received | |
|---|---|---|---|
| 628 Delhi | $650.00 | $650.00 | |
| 632 Delhi | $795.00 | $795.00 | |
| 636 Delhi - A | $650.00 | $650.00 | |
| 636 Delhi - B | $650.00 | $650.00 | |
| 667 Delhi | $650.00 | $650.00 | |
| 700 Delhi - A | $575.00 | $575.00 | |
| 700 Delhi - B | $525.00 | $525.00 | |
| 700 Delhi - C | $750.00 | $750.00 | *why* |
| 742 Delhi | $500.00 | $500.00 | Discount approved by Receiver |
| 753 Delhi | $390.00 | $390.00 | |
| 649 Sedam | $795.00 | $795.00 | |
| 659 Sedam - A (Davis) | $675.00 | | Rent not paid |
| 659 Sedam - B (Lundy) | $650.00 | $640.00 | $10 short |
| 659 Sedam - C (Lott) | | | |
| 652 Steiner | | | |
| **TOTAL RENT ROLL (INCOME)** | **$8,255.00** | **$7,570.00** | |

### EXPENSES

| | | |
|---|---|---|
| ADVANCED AUTO PARTS | $5.30 | *Truck expense* |
| ADVANCED AUTO PARTS | $16.68 | |
| **ADVANCED AUTO PARTS TOTAL** | **$21.98** | |
| | | |
| AUTOZONE | $3.73 | |
| **AUTOZONE TOTAL** | **$3.73** | |
| | | |
| DELFAIR LOCK & KEY | $82.39 | |
| **DELFAIR LOCK & KEY TOTAL** | **$82.39** | *TriState responsble* |
| | | |
| DUKE 637 STEINER | $86.44 | |
| DUKE 671 DELHI | $136.03 | |
| **DUKE TOTAL** | **$222.47** | |
| | | |
| ERIE INSURANCE - LIABILITY INS. - SEPTEMBER | $53.57 | |
| **ERIE INSURANCE TOTAL** | **$53.57** | |
| | | |
| SPEEDWAY FUEL | $20.00 | *Truck* |
| UDF FUEL | $26.00 | |
| UDF FUEL | $10.00 | |
| SHELL FUEL | $10.00 | |
| **FUEL TOTAL** | **$66.00** | |
| | | |
| HOME DEPOT | $21.37 | |
| HOME DEPOT | $36.88 | |
| HOME DEPOT | $201.44 | |
| HOME DEPOT | $48.45 | |
| HOME DEPOT | $4.00 | |

| | |
|---|---|
| HOME DEPOT | $76.97 |
| **HOME DEPOT TOTAL** | **$389.11** |
| | |
| JONES HVAC - 673 DELHI | $700.00 |
| JONES HVAC - 667 DELHI | $100.00 |
| JONES HVAC - 659 SEDAM (HVAC) | $100.00 |
| JONES HVAC - 659 SEDAM (PLUMBING) | $350.00 |
| **JONES HVAC TOTAL** | **$1,250.00** |
| | |
| LOWE'S | $23.67 |
| **LOWE'S TOTAL** | **$23.67** |
| | |
| MCCABE | $35.30 |
| MCCABE | $24.60 |
| MCCABE | $27.80 |
| **MCCABE TOTAL** | **$87.70** |
| | |
| MEYER HDWE | $57.95 |
| MEYER HDWR | $19.88 |
| MEYER HDWR | $3.20 |
| MEYER HDWR | $29.72 |
| MEYER HDWR | $72.69 |
| MEYER HDWR | $17.84 |
| MEYER HDWR | $3.20 |
| MEYER HDWR | $25.67 |
| MEYER HDWR | $5.13 |
| MEYER HDWR | $33.76 |
| MEYER HDWR | $24.56 |
| MEYER HDWR | $14.43 |
| MEYER HDWR | $6.17 |
| MEYER HDWR | $0.63 |
| MEYER HDWR | $7.48 |
| MEYER HDWR | $25.64 |
| MEYER HDWR | $76.87 |
| MEYER HDWR | $0.64 |
| MEYER HDWR | $1.60 |
| **MEYER HARDWARE TOTAL** | **$427.06** |
| | |
| NEW DAWN TOWING | $88.28 |
| NEW DAWN TOWING | $69.55 |
| **NEW DAWN TOWING TOTAL** | **$157.83** |
| | |
| PARKING - DOWNTOWN 9/17 | $12.00 |
| PARKING - DOWNTOWN 9/18 | $12.00 |
| PARKING - DOWNTOWN 10/2 | $12.00 |
| PARKING - DOWNTOWN 10/5 | $12.00 |
| **PARKING CHARGES TOTAL** | **$48.00** |
| | |
| PLUMB TREE PLUMBING - 659 SEDAM | $170.00 |
| **PLUMB TREE PLUMBING TOTAL** | **$170.00** |
| | |
| STAPLES | $44.68 |
| STAPLES | $31.65 |

*(handwritten notes in right margin:)*

— no permits

} 19 trips / lack of planning

} Truck ?

} why ?

2

| | |
|---|---|
| **STAPLES TOTAL** | **$76.33** |
| | |
| TRUE PLUMBING - HYDROJETTING 628 DELHI | $650.00 |
| **TRUE PLUMBING TOTAL** | **$650.00** |
| | |
| WES PAR RENTAL | $44.00 |
| **WESPAR RENTAL TOTAL** | **$44.00** |
| | |
| WESSELS ELECTRIC | $525.00 |
| WESSELS ELECTRIC | $650.00 |
| **WESSELS ELECTRIC TOTAL** | **$1,175.00** |
| | |
| WILFERT ELECTRIC | $85.00 |
| **WILFERT ELECTRIC TOTAL** | **$85.00** |
| | |
| **TOTAL EXPENSES PAID BY TSO** | **$5,033.84** |
| | |
| TSO Management Fee - 10% of Rent Roll | $825.50 |

*still not complete*

*for what?*

**Labor Costs paid by TSO**

| | |
|---|---|
| WORKER 1 | $2,115.00 |
| WORKER 2 | $1,647.25 |
| WORKER 3 | $565.20 |
| WORKER 4 | $327.05 |
| WORKER 5 | $420.00 |
| WORKER 6 | $511.18 |
| WORKER 7 | $202.50 |
| WORKER 11 | $307.50 |
| WORKER 12 | $200.00 |
| WORKER 13 | $352.50 |
| | |
| **TOTAL LABOR PAID BY TSO** | **$6,295.68** |

*who are the employees*

| | |
|---|---|
| TOTAL OWED TO TSO | $12,155.02 |
| TOTAL PAID TO TSO | $7,570.00 |
| AMOUNT DUE TSO FOR SEPTEMBER | $4,585.02 |
| | |
| CARRYOVER FROM AUGUST | $53,288.38 |
| TSO | $57,873.40 |

Respectfully submitted, on this 7th day of October, 2020, to Receiver Richard Boydston of Konza Inc.

TriState Organization Inc.

3

**Summary of Maintenance & Repairs**

**628 Delhi**
Hydro Jetting was done, but did not clear the pipe. The tree root was too big to clear. The tree causing the problem was removed and MSD repaired the pipe.

**636 Delhi**
Since there was no furnace for the second floor apartment, a new furnace was purchased and installed. *But Rented in May w/ full knowledge There was none.*

**667 Delhi**
The furnace was repaired and is now working properly.

**671/673 Delhi** /
A new furnace was purchased and installed. *Tri State my lease responsible*

**742 Delhi**
Cleared the waste pipe which was leaking excrement into the basement. Cleaned up the waste and scrubbed the basement floor with bleach.

There were holes in the wall behind the stove, which we filled with insulation foam. There are also holes in the foundation walls of the basement allowing snakes, rodents, etc. into the home. We are in the process of repairing those walls.

Repaired the leak under the kitchen sink and replaced the pipes under the sink.

**649 Sedam**
Resecured the wall and the window that was falling down. Provided cleanup and had Terminix out for extermination of German cockroaches. *— Their were never roaches so, why are we responsible + they cut her grass all year at no cost.*

**659 Sedam**

**Unit C**
Purchased and installed a new stove, finished up the painting and installation of the trim, blanked out two outlets in the living room that didn't have wiring. *ordered Vacated*

**All Properties**
We continue to maintain the curb appeal of the neighborhood by picking up trash, mowing lawns, trimming weeds, etc., as needed. *That are not the responsibility of planiff!!*

4

Respectfully submitted, on this 8th day of October, 2020, to Receiver Richard Boydston of Konza Inc.

Tristate Organization Inc.



HAMILTON COUNTY
# CLERK OF COURTS
1000 Main St, Cincinnati, OH 45202



*Ohio Attorney*
RICHARD BOYDSTON

LOGOUT

Home    Favorite Cases    My E-Filings    Case Search    Payment History    Support Documents    My Account

File on an Existing Case  Filing ▶▶  Payment ▶▶  Verification ▶▶  Confirmation

## EXISTING CASE FILING CONFIRMATION

**Your filing has been submitted. Below is a summary of this transaction you may [Print] or copy for your records.**

## Confirmation Number: 995051

**Case Number:** A 1905588
**Case Caption:** CITY OF CINCINNATI v JOHN KLOSTERMAN
**Case Filed:** 11/25/2019
**Case Type:** COMMON PLEAS CIVIL
**Judge:** ETHNA M COOPER

### FILING INFORMATION

**Filing Category:** COMMON PLEAS CIVIL FILINGS
**Filing Type:** FILING (USE WHEN NO OTHER TYPE APPLIES)
**Filing Date:** 10/13/2020
**Filing Time:** 03:41 PM

### DOCUMENT INFORMATION

| Document Type | Title | Format | Pages |
|---|---|---|---|
| FILING (USE WHEN NO OTHER TYPE APPLIES) | RECEIVER'S SEVENTH REPORT | PDF | 8 |

Add Case to Favorites

Print        Home

© 2020 Aftab Pureval, Hamilton County Clerk of Courts | All Rights Reserved | Privacy Policy
4 583.1 4690.7579.202(0)

TRISTATE ORGANIZATION INC.
673 DELHI AVE
CINCINNATI, OH 45204-1239

Marietta Adjudication Center
PO Box 182212
Columbus, OH 43218-2212

Phone: (866) 867-0044
Fax: (614) 466-7449

*exhibit C*

| Employer's Name | UC Account Number |
|---|---|
| TRISTATE ORGANIZATION INC. | |

## THIS NOTICE IS A DETERMINATION OF AN INITIAL APPLICATION FOR UNEMPLOYMENT BENEFITS, ISSUED IN ACCORDANCE WITH THE PROVISIONS OF SECTIONS 4141.28(D) & (E), OHIO REVISED CODE

The Ohio Department of Job and Family Services has ALLOWED the claimant's application for unemployment compensation benefits with a benefit year that begins 05/10/2020. During this one-year benefit period, the claimant's benefits rights are as follows:

| | |
|---|---|
| Weekly Benefit Amount is: | $200.00 |
| Dependency Class is: | A1 |
| Total Benefits Payable Amount is: | $5,200.00 |

The claimant's employment during the base period, **01/01/2019 to 12/31/2019** met the weeks and wages eligibility requirement. The chart below shows the employer's Total Amount Chargeable and Proportional Charge with each base period employer, which were used to determine the claimant's benefit rights.

| Employer Name | Total Amount Chargeable | Proportional Charge |
|---|---|---|
| D & D ADVERTISING ENTERPRISES, INC. | $0.00 | 0.0000% |

This agency finds that beginning on 03/20/2020, the claimant was either partially or totally unemployed due to a lack of work/layoff from TRISTATE ORGANIZATION INC., per Ohio Revised Code Section 4141.29(D)(2)(a).

Interested Parties:
**ANGEL STRUNK**

**D & D ADVERTISING ENTERPRISES, INC.**

**APPEAL RIGHTS:** If you do not agree with this determination, you may file an appeal by mail or fax to the ODJFS office provided. You may also file an appeal online at https://unemployment.ohio.gov. The appeal should include the determination ID number, name, claimant's social security number, and any additional facts and/or documentation to support the appeal. **TO BE TIMELY, YOUR APPEAL MUST BE RECEIVED/POSTMARKED NO LATER THAN 06/29/2020** (21 calendar days after the 'Date Issued'). If the 21st day falls on a Saturday, Sunday, or legal holiday, your deadline has already been extended to include the next scheduled work day. If you do not file your appeal within the 21-day calendar period, include a statement with the date you received the determination and your reason for filing late. If your appeal is late due to a physical or mental condition, provide certified medical evidence that your condition prevented you from filing within the 21-day period. In order for your appeal to be considered timely, it must be

Si usted no puede leer esto, llame por favor a 1-877-644-6562 para una traduccion.

THIS SPACE FOR OFFICIAL USE ONLY
CORRESPONDENCE ID: 000000465528620

CLAIMANT ID: 000000212471280

PSN: 009344
NOTICE: JI41N1

## Insurance on properties

John Klosterman <worldwidemobile@hotmail.com>

Thu 9/17/2020 6:51 PM

**To:** Boydston, Richard <richard.boydston@dentons.com>
**Bcc:** jon klosterman <worldwidemobil@hotmail.com>

Mr. Boydson

Cindy at Warsaw Federal has insurance pending on the 3 properties that they have mortgages on.

I informed her that the Reciever has insurance on all the properties. She needs to hear from you by monday that there is liability insurance on 638,639 Steiner and 659 sedan.

I was told that the insurance company required fire extinguishers at each property.
Her email to send verification is clucas@warsawfederal.com

Please copy me the verification at worldwidemobile@hotmail.com

I still await a time to view the documents I requested, and when can I get into 701 delhi to remove some material?

Thank you

Sent from my T-Mobile 4G LTE Device

## sedamsville review of tristate records

John Klosterman <worldwidemobile@hotmail.com>
Mon 9/14/2020 1:08 AM
To: Boydston, Richard <richard.boydston@dentons.com>
Bcc: Peter Forster <pefo0128@outlook.com>

Mr. Boydston

Thank you for giving me the opportunity to review all the receipts that Tristate created.  We believe 3 hours we can review 5 months of receipts . Are August receipts going to be available as well?

I would also want to review the employees, both current and past. and their time cards.

As I had requested in prior emails, could you provide the applications, of new tenants and their leases.

We would like the Wednesday 16th  at 10:30 am to begin reviewing the documents in a private conference room.


I also wanted to remove some material from 701 Delhi. How would I arrange to get a key? I do not under the current circumstances want to see or speak with Mr. Lentine or Harry Tye, who has threatened me with physical harm, and judging from his criminal background , is capable of doing so.
There is an outstanding warrant out for him as well, and drives under suspension, as I have known all along'

Thank you


John

**Christian D. Donovan, Esq.**

Direct Dial: (614) 229-4476
Fax: (866) 345-4948

E-Mail: CDonovan@LNLattorneys.com

June 18, 2020

John Klosterman
639 Steiner Ave
Cincinnati, OH 45204
*Borrower*

Susan Klosterman
5615 Sidney Road
Cincinnati, OH 45238
*Borrower*

Richard Boydston, Esq.
Dentons Bingham Greenebaum LLP
255 East 5th Street #2350
Cincinnati, OH 45202
*Counsel for Konza, LLC, Receiver*

Gary R. Lewis, Esq.
30 Garfield Place, Suite 915
Cincinnati, OH 45202
*Counsel for Borrowers*

## NOTICE OF INTENT TO ACCELERATE and RIGHT TO REINSTATE

**This notice is regarding Account Number x5188 due Warsaw Federal Savings and Loan Association which is now seriously delinquent.**

The balance due as of the date of this Notice is Seventy-Nine Thousand Six Hundred Five and 05/100 Dollars ($79,605.05) plus Interest after this date accruing in the amount of $15.53 per day and a late charge of $141.48. Additionally, the terms of the documents require you to pay all of the Bank's reasonable legal fees and expenses incurred in collecting this loan, which are in the current amount of $1,935.00

This letter shall serve as final Notice to you of the following:

A) Account Number x5188 is secured by a mortgage of record at Official Records Book 10401, Page 998 of the Hamilton County, Ohio Recorder's office on the properties located at:
   - 638 Steiner Avenue, Cincinnati, Ohio 45204;
   - 640 Steiner Avenue, Cincinnati, Ohio 45204;
   - 938 Striker Avenue, Cincinnati, Ohio 45204;
   - 940 Striker Avenue, Cincinnati, Ohio 45204;
   - 659 Sedam Street, Cincinnati, Ohio 45204;
   - 639 Steiner Avenue, Cincinnati, Ohio 45204;

and a Second Modification of Loan Documents of record at Official Records Book 12688, Page 1741, of the Hamilton County, Ohio Recorder's office on the collateral properties located at:

- 652 Steiner Avenue, Cincinnati, Ohio 45204;
- 632 Delhi Avenue, Cincinnati, Ohio 45204; and
- 794 Delhi Avenue, Cincinnati, Ohio 45204.

This loan is in default for the failure to make payments as they have become due.

B) The action required to cure the default on this loan is the payment of all delinquencies, late charges, legal fees and costs, and the regularly scheduled payments coming due after the date of this letter.

C) The amounts which must be paid to cure the default on this loan as of the date of this letter is Three Thousand Two Hundred Seven and 54/100 Dollars ($3,207.54), being the amount delinquency and late charges in the amount of $141.48 and legal fees of $1,935.00 incurred with respect to the pending legal action and receivership and for preparation of this Notice. **The total amount to reinstate is $5,284.02.**

D) All of the above amounts must be paid in full on or before 4:00 p.m. **Monday, July 19, 2020.**

E) The next payment in the amount of $1,022.02 is also due July 1, 2020 and must also be paid timely or additional late fees will be added.

F) **The failure to pay all of the foregoing amounts in full on or before 4:00 p.m. Monday, July 19, 2020 will result in the acceleration of the loan, foreclosure by judicial proceedings of the Mortgage and Second Modification of Loan Documents securing repayment and a Sheriff's sale of the mortgaged and collateral real estate.**

G) The Mortgage securing payment of this loan contains the following right to reinstate your loan (you are the "Borrower"):

**"19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or {c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, a treasurer's check or cashier's check, provided any such check is

drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18."

You are further given Notice that there is a right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of default or any other defense to acceleration or foreclosure.

Sincerely,

Christian D. Donovan

NOTICE – This is an attempt to collect a debt. Any information that we obtain will be used for that purpose. We will assume this debt to be valid unless you dispute the validity of all or any part of it within 30 days of receipt of this letter. If you notify us in writing that you dispute all or part of the debt, we will obtain and send to you verification of the debt or a copy of the judgment against you. Upon written request within 30 days after receipt of this notice, we will provide you with the name and address of the original creditor, if different from the creditor named above.

# City of Cincinnati



**Department of Buildings & Inspections**
**Division of Property Maintenance Code Enforcement**

Two Centennial Plaza - 805 Central Avenue, Suite 500 - Cincinnati, Ohio 45202 - P (513) 352-3275 - F (513) 564-1708

KLOSTERMAN JOHN
5615 SIDNEY RD
CINCINNATI OH 45238

PERSON CHARGED: KLOSTERMAN JOHN
Case Number: B202001467

Subject Property: 703    DELHI AV
BPP: 015300020090

**NOTICE OF CIVIL OFFENSE AND CIVIL FINE**

### NOTICE DATE: September 01, 2020

To: KLOSTERMAN JOHN

**This is a notice of civil offense and civil fine.** On August 27, 2020 , I inspected the premises located at 703 DELHI AV CINC St: 703 Fl: 1 Unit: 1 , and found that you have not complied with the lawful order(s) of the Director of Buildings and Inspections issued on March 17, 2020 . As of the day and time of my inspection, the following violations identified on the attached **VIOLATION LISTING** had not been corrected.

Pursuant to Section 1501-9 of the Cincinnati Municipal Code, a violation of the Cincinnati Building Code is a Class D civil offense. The fine for a Class D offense is $750.00. You must either pay the fine or file an answer to this notice within 168 hours or the fine will double. Please see the enclosed brochure with instructions for payment, filing an answer, and requesting a hearing. **Please include the enclosed Payment and Hearing Request Sheet with your payment or request for a hearing.**

If you correct all of the Code violations by the date of the hearing, the fine will be reduced by 50%. If you correct the violations before the hearing, please call 352-4788, or e-mail terry.james@cincinnati-oh.gov       , to arrange for reinspection. Failure to appear at a requested hearing will be considered an admission of the civil offense. All available collection remedies and costs of collection will be pursued in the event the civil fine and delinquent charges are not timely paid.

I, Terry James , the undersigned Housing Inspector, City of Cincinnati Department of Buildings & Inspections, inspected the subject premises and attest that the facts set forth in this Notice of Civil Offense and Fine are true.

_Terry James_ Badge # _54_ Date _09/01/20_ Time:_09:00_ A.M. P.M.
Inspector



# City of Cincinnati

**Department of Buildings & Inspections**
**Division of Property Maintenance Code Enforcement**



Two Centennial Plaza - 805 Central Avenue, Suite 500 - Cincinnati, Ohio 45202 - P (513) 352-3275 - F (513) 564-1708

VIRGINIA WILLIAMSBURG LLC
C/O JOHN KLOSTERMAN
5615 SIDNEY RD
CINCINNATI OH 45238-1857

**Re:685 HALSEY AV**        **685 HALSEY AV, CINC - GJ0986229692**
BPP: 015500480001
**NOTICE OF VIOLATION- VACANT BUILDING**
Case number: B202004036

**NOTICE DATE September 18, 2020**

To: VIRGINIA WILLIAMSBURG LLC,

**This letter is a notice of violation and order issued pursuant to 1101-61 Cincinnati Building Code (CBC).** Each code violation in the attached **violation listing** includes the action necessary to correct the violation. Unless otherwise specified in a violation, you are required to make the noted corrections by October 19, 2020 . **Please call the Inspector at 352-4788 between 7:00 to 9:00 a.m., or E-Mail: terry.james@cincinnati-oh.gov, to acknowledge receipt of this notice and ask questions.** If we do not hear from you within ten days of the date of this notice, a copy of this notice will be posted on the building. Failure to correct the noted defects within the time specified could result in civil or criminal enforcement actions. All repairs, except minor repairs.and decorating, require permits. Permits may be obtained at 805 Central Avenue, Suite 500, Cincinnati, Ohio, 45202.

You have a right to appeal orders under Section 1101-81 CBC and Section 1101-83 CBC, within 30 days of the date of this notice. Appeal of an order to vacate a property, or a dangerous and unsafe premises declaration (condemnation) is appealed to the Secretary of the Board of Building Appeals (BBA). Appeals are filed at 805 Central Avenue, Suite 500, Cincinnati, Ohio, 45202. Appeals must be filed on the BBA appeal application form; be accompanied with the filing fee; state the grounds for the appeal; and be filed with the secretary of the appropriate board. At the hearing, the owner may be represented by counsel, present arguments or contentions orally or in writing, and present evidence and examine witnesses appearing for or against the owner. Persons subject to the Vacated Building Maintenance License (VBML) requirements may petition the Director of Buildings & Inspections for suspension of fees and/or maintenance standards as prescribed under CBC Section 1101-80.1.

Existing painted surfaces disturbed, if any, while performing this work may contain lead. To learn more about lead hazards go to EPA website: http://epa.gov/lead/pubs/leadinfo.htm#facts, or contact the Cincinnati Health Department at 357-7420. Your cooperation in correcting these violations will assist the City of Cincinnati in maintaining quality property and building conditions in neighborhoods.

Sincerely,

Terry James
District Inspector
E-Mail: terry.james@cincinnati-oh.gov

E. Cunningham, OBBS Certified Building Official        Cert # 310



city of
CINCINNATI
BUILDINGS &
INSPECTIONS

Invoice Date: 08/27/2019
Due Date: 09/28/2019
Amount Due: **$88.40**

**Make check payable to "The City of Cincinnati" & remit to:**

Dept. of Buildings & Inspections
Accounting- PMCE
805 Central Avenue, Suite 500
Cincinnati, Ohio 45202

Location: **700 DELHI AV**

VIRGINIA WILLIAMBURG LLC
C/O JOHN KLOSTERMAN
701 DELHI
CINCINNATI OH 45204

Case#: B201900083     Status: CRIMPREP

FIRE

08/12/2019

## INVOICE

*Please detach the top portion of this invoice and return it with the payment.*

This is an invoice for abatement fees. This abatement activity fee is authorized by Section 1101-64 Cincinnati Building Code (CBC). The fee is to reimburse municipal costs of code enforcement, inspections, and administration.

**PLEASE TIMELY PAY THE FEE AS DIRECTED IN THIS LETTER TO AVOID COLLECTION. COLLECTION ACTIONMAY INCLUDE BUT IS NOT LIMITED TO ASSESSMENT OF THE FEES ON THE PROPERTY TAX BILL.**

Orders to correct code violations were issued to you as the owner or person in control of the property on 01/09/2019. That notice specified a compliance due date of 02/08/2019. As of our last inspection, the district inspector reports that the violations have not been corrected.

**If you have already completed the work, please call the Inspector Terry James, at 352-4788, between , 7:00 to 9:00 a.m., or E-Mail: terry.james@cincinnati-oh.gov. The inspector does not have information on fee invoicing, but will be glad to assist with code compliance related issues.**

Failure to correct the following violations within the time specified in this notice subjects the premises to an escalating quarterly inspection fee for each quarter the premises remains non-compliant.

| Days Out of Compliance | Base Fee | Technology Surcharge | Fin. Recovery Surcharge | Total Fee | Due Date |
|---|---|---|---|---|---|
| 230 | $50.00 | $1.50 | $0.50 | **$52.00** | 09/28/2019 |

*(Includes any past due fees)*     Pay This Amount : **$88.40**

**Unpaid fees may be assessed to the property tax bill for the location and collected along with the biannual property taxes due.**

Your cooperation in correcting the code violations issued 01/09/2019, will avoid additional the escalating abatement fees that will be due each quarter as well as further code enforcement action that may include fines and penalties. Correcting the violations will assist the City of Cincinnati and your neighbors in maintaining quality property conditions and property values in your neighborhood while protecting your own investment.

*If this abatement fee to cover municipal abatement activity costs will create an undue burden based upon your circumstances, you may request suspension of the fee. To be eligible for consideration you must have a plan to correct the violations that includes a method of funding. Also, a suspension cannot be granted where unreasonably hazardous conditions are allowed to exist. You may file a request for fee suspension by completing the prescribed form and submitting the request to the Director of Buildings & Inspections. The form and instructions for completing and submitting the request are available on the Department of Buildings & Inspections website at https://www.cincinnati-oh.gov/buildings/*

Department of Buildings & Inspections, 805 Central Avenue, Cincinnati Ohio, 45202  - Information Ph. 513-352-3275


**city of**
**CINCINNATI**
BUILDINGS &
INSPECTIONS

| | |
|---|---|
| **Invoice Date:** | 08/11/2020 |
| **Due Date:** | 09/08/2020 |
| **Amount Due:** | **$36.40** |

*Make check payable to "The City of Cincinnati" & remit to:*

Dept. of Buildings & Inspections
Accounting- PMCE
805 Central Avenue, Suite 500
Cincinnati, Ohio 45202

KLOSTERMAN JOHN
5615 SIDNEY RD
CINCINNATI OH 45238

Location: **703 DELHI AV**

Case#: **B202001467**    Status: FINLNOTC

**VACANT**

# INVOICE

07/15/2020

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*Please detach the top portion of this invoice and return it with the payment.*

This is an invoice for quarterly abatement fees. This fee is authorized by Section 1101-64 Cincinnati Building Code (CBC). The fee is to reimburse municipal costs of code enforcement, inspections, and administration.

**PLEASE TIMELY PAY THE FEE AS DIRECTED IN THIS LETTER TO AVOID COLLECTION. COLLECTION ACTIONMAY INCLUDE BUT IS NOT LIMITED TO ASSESSMENT OF THE FEES ON THE PROPERTY TAX BILL.**

Orders to correct code violations were issued to you as the owner or person in control of the property on 03/17/2020. That notice specified a compliance due date of 04/16/2020. As of our last inspection, the district inspector reports that the violations have not been corrected.

**If you have already completed the work, please call the Inspector Terry James, at 352-4788, between , 7:00 to 9:00 a.m., or E-Mail: terry.james@cincinnati-oh.gov. The inspector does not have information on fee invoicing, but will be glad to assist with code compliance related issues.**

Failure to correct the following violations within the time specified in this notice subjects the premises to an escalating quarterly abatement fee for each quarter the premises remains non-compliant.

| Days Out of Compliance | Base Fee | Technology Surcharge | Fin. Recovery Surcharge | Total Fee | Due Date |
|---|---|---|---|---|---|
| 143 | $35.00 | $1.05 | $0.35 | $36.40 | 09/08/2020 |

Pay This Amount : $36.40

**Unpaid fees may be assessed to the property tax bill for the location and collected along with the biannual property taxes due.**

Your cooperation in correcting the code violations issued 03/17/2020, will avoid additional the escalating abatement fees that will be due each quarter as well as further code enforcement action that may include fines and penalties. Correcting the violations will assist the City of Cincinnati and your neighbors in maintaining quality property conditions and property values in your neighborhood while protecting your own investment.

*If this abatement fee to cover municipal abatement activity costs will create an undue burden based upon your circumstances, you may request suspension of the fee. To be eligible for consideration you must have a plan to correct the violations that includes a method of funding. Also, a suspension cannot be granted where unreasonably hazardous conditions are allowed to exist. You may file a request for fee suspension by completing the prescribed form and submitting the request to the Director of Buildings & Inspections. The form and instructions for completing and submitting the request are available on the Department of Buildings & Inspections website at https://www.cincinnati-oh.gov/buildings/*



city of
**CINCINNATI** C
BUILDINGS &
INSPECTIONS

| | |
|---|---|
| **Invoice Date:** | 08/11/2020 |
| **Due Date:** | 09/08/2020 |
| **Amount Due:** | $36.40 |

*Make check payable to "The City of Cincinnati" & remit to:*

Dept. of Buildings & Inspections
Accounting- PMCE
805 Central Avenue, Suite 500
Cincinnati, Ohio 45202

KLOSTERMAN JOHN C
5616 SIDNEY RD
CINCINNATI OH 45238

Location: **652 STEINER AV**

Case#: **B202001396**    Status: ORDERS

R CODES

# INVOICE

07/29/2020

---

*Please detach the top portion of this invoice and return it with the payment.*

This is an invoice for quarterly abatement fees. This fee is authorized by Section 1101-64 Cincinnati Building Code (CBC). The fee is to reimburse municipal costs of code enforcement, inspections, and administration.

**PLEASE TIMELY PAY THE FEE AS DIRECTED IN THIS LETTER TO AVOID COLLECTION. COLLECTION ACTIONMAY INCLUDE BUT IS NOT LIMITED TO ASSESSMENT OF THE FEES ON THE PROPERTY TAX BILL.**

Orders to correct code violations were issued to you as the owner or person in control of the property on 03/18/2020. That notice specified a compliance due date of 04/17/2020. As of our last inspection, the district inspector reports that the violations have not been corrected.

**If you have already completed the work, please call the Inspector Terry James, at 352-4788, between , 7:00 to 9:00 a.m., or E-Mail: terry.james@cincinnati-oh.gov. The inspector does not have information on fee invoicing, but will be glad to assist with code compliance related issues.**

Failure to correct the following violations within the time specified in this notice subjects the premises to an escalating quarterly abatement fee for each quarter the premises remains non-compliant.

| Days Out of Compliance | Base Fee | Technology Surcharge | Fin. Recovery Surcharge | Total Fee | Due Date |
|---|---|---|---|---|---|
| 142 | $35.00 | $1.05 | $0.35 | $36.40 | 09/08/2020 |

**Pay This Amount :    $36.40**

**Unpaid fees may be assessed to the property tax bill for the location and collected along with the biannual property taxes due.**

Your cooperation in correcting the code violations issued 03/18/2020, will avoid additional the escalating abatement fees that will be due each quarter as well as further code enforcement action that may include fines and penalties. Correcting the violations will assist the City of Cincinnati and your neighbors in maintaining quality property conditions and property values in your neighborhood while protecting your own investment.

*If this abatement fee to cover municipal abatement activity costs will create an undue burden based upon your circumstances, you may request suspension of the fee. To be eligible for consideration you must have a plan to correct the violations that includes a method of funding. Also, a suspension cannot be granted where unreasonably hazardous conditions are allowed to exist. You may file a request for fee suspension by completing the prescribed form and submitting the request to the Director of Buildings & Inspections. The form and instructions for completing and submitting the request are available on the Department of Buildings & Inspections website at https://www.cincinnati-oh.gov/buildings/*

---



city of
**CINCINNATI** C
BUILDINGS &
INSPECTIONS

| | |
|---|---|
| **Invoice Date:** | 08/11/2020 |
| **Due Date:** | 09/08/2020 |
| **Amount Due:** | $36.40 |

*Make check payable to "The City of Cincinnati" & remit to:*

Dept. of Buildings & Inspections
Accounting- PMCE
805 Central Avenue, Suite 500
Cincinnati, Ohio 45202

KLOSTERMAN JOHN C
5615 SIDNEY RD
CINCINNATI OH 45238-1857

**Location:** **659 SEDAM ST**

**Case#:** **B202001460**     **Status:** FINLNOTC

R CODES

# INVOICE

07/01/2020

---

*Please detach the top portion of this invoice and return it with the payment.*

This is an invoice for quarterly abatement fees. This fee is authorized by Section 1101-64 Cincinnati Building Code (CBC). The fee is to reimburse municipal costs of code enforcement, inspections, and administration.

**PLEASE TIMELY PAY THE FEE AS DIRECTED IN THIS LETTER TO AVOID COLLECTION. COLLECTION ACTIONMAY INCLUDE BUT IS NOT LIMITED TO ASSESSMENT OF THE FEES ON THE PROPERTY TAX BILL.**

Orders to correct code violations were issued to you as the owner or person in control of the property on 03/17/2020. That notice specified a compliance due date of 04/16/2020. As of our last inspection, the district inspector reports that the violations have not been corrected.

**If you have already completed the work, please call the Inspector Terry James, at 352-4788, between , 7:00 to 9:00 a.m., or E-Mail: terry.james@cincinnati-oh.gov. The inspector does not have information on fee invoicing, but will be glad to assist with code compliance related issues.**

Failure to correct the following violations within the time specified in this notice subjects the premises to an escalating quarterly abatement fee for each quarter the premises remains non-compliant.

| Days Out of Compliance | Base Fee | Technology Surcharge | Fin. Recovery Surcharge | Total Fee | Due Date |
|---|---|---|---|---|---|
| 143 | $35.00 | $1.05 | $0.35 | $36.40 | 09/08/2020 |

**Pay This Amount :**     $36.40

**Unpaid fees may be assessed to the property tax bill for the location and collected along with the biannual property taxes due.**

Your cooperation in correcting the code violations issued 03/17/2020, will avoid additional the escalating abatement fees that will be due each quarter as well as further code enforcement action that may include fines and penalties. Correcting the violations will assist the City of Cincinnati and your neighbors in maintaining quality property conditions and property values in your neighborhood while protecting your own investment.

*If this abatement fee to cover municipal abatement activity costs will create an undue burden based upon your circumstances, you may request suspension of the fee. To be eligible for consideration you must have a plan to correct the violations that includes a method of funding. Also, a suspension cannot be granted where unreasonably hazardous conditions are allowed to exist. You may file a request for fee suspension by completing the prescribed form and submitting the request to the Director of Buildings & Inspections. The form and instructions for completing and submitting the request are available on the Department of Buildings & Inspections website at https://www.cincinnati-oh.gov/buildings/*

---

*Department of Buildings & Inspections, 805 Central Avenue, Cincinnati Ohio, 45202 - Information Ph. 513-352-3275*



city of
**CINCINNATI** C
BUILDINGS &
INSPECTIONS

| | |
|---|---|
| Invoice Date: | 06/17/2020 |
| Due Date: | 06/20/2020 |
| Amount Due: | $156.00 |

*Make check payable to "The City of Cincinnati" & remit to:*

Dept. of Buildings & Inspections
Accounting- PMCE
805 Central Avenue, Suite 500
Cincinnati, Ohio 45202

KLOSTERMAN JOHN
671 DELHI AVE
CINCINNATI OH 45204

Location: **654 STEINER AV**

Case#: **B201904910**     Status: FINLNOTC

**VACANT**

# INVOICE

09/11/2019

--- --- --- --- --- --- --- ---

*Please detach the top portion of this invoice and return it with the payment.*

This is an invoice for quarterly abatement fees. This fee is authorized by Section 1101-64 Cincinnati Building Code (CBC). The fee is to reimburse municipal costs of code enforcement, inspections, and administration.

**PLEASE TIMELY PAY THE FEE AS DIRECTED IN THIS LETTER TO AVOID COLLECTION. COLLECTION ACTIONMAY INCLUDE BUT IS NOT LIMITED TO ASSESSMENT OF THE FEES ON THE PROPERTY TAX BILL.**

Orders to correct code violations were issued to you as the owner or person in control of the property on 07/02/2019. That notice specified a compliance due date of 08/01/2019. As of our last inspection, the district inspector reports that the violations have not been corrected.

**If you have already completed the work, please call the Inspector Terry James, at 352-4788, between , 7:00 to 9:00 a.m., or E-Mail: terry.james@cincinnati-oh.gov. The inspector does not have information on fee invoicing, but will be glad to assist with code compliance related issues.**

Failure to correct the following violations within the time specified in this notice subjects the premises to an escalating quarterly abatement fee for each quarter the premises remains non-compliant.

| Days Out of Compliance | Base Fee | Technology Surcharge | Fin. Recovery Surcharge | Total Fee | Due Date |
|---|---|---|---|---|---|
| 322 | $65.00 | $1.95 | $0.65 | $67.60 | 06/20/2020 |

(Includes any past due fees)     **Pay This Amount :**     **$156.00**

**Unpaid fees may be assessed to the property tax bill for the location and collected along with the biannual property taxes due.**

Your cooperation in correcting the code violations issued 07/02/2019, will avoid additional the escalating abatement fees that will be due each quarter as well as further code enforcement action that may include fines and penalties. Correcting the violations will assist the City of Cincinnati and your neighbors in maintaining quality property conditions and property values in your neighborhood while protecting your own investment.

*If this abatement fee to cover municipal abatement activity costs will create an undue burden based upon your circumstances, you may request suspension of the fee. To be eligible for consideration you must have a plan to correct the violations that includes a method of funding. Also, a suspension cannot be granted where unreasonably hazardous conditions are allowed to exist. You may file a request for fee suspension by completing the prescribed form and submitting the request to the Director of Buildings & Inspections. The form and instructions for completing and submitting the request are available on the Department of Buildings & Inspections website at https://www.cincinnati-oh.gov/buildings/*



**Invoice Date:** 10/26/2020

**Due Date:** 11/17/2020

**Amount Due:** $494.00

*Make check payable to "The City of Cincinnati" & remit to:*

Dept. of Buildings & Inspections
Accounting- PMCE
805 Central Avenue, Suite 500
Cincinnati, Ohio 45202

VIRGINIA WILLIAMBURG  LLC
C/O JOHN KLOSTERMAN
5615 SIDNEY RD
CINCINNATI OH 45238-185?

**Location: 700 DELHI AV**

**Case#: B201900083**   **Status:** CRIMPREP

FIRE

# INVOICE

09/01/2020

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*Please detach the top portion of this invoice and return it with the payment.*

This is an invoice for quarterly abatement fees. This fee is authorized by Section 1101-64 Cincinnati Building Code (CBC). The fee is to reimburse municipal costs of code enforcement, inspections, and administration.

**PLEASE TIMELY PAY THE FEE AS DIRECTED IN THIS LETTER TO AVOID COLLECTION. COLLECTION ACTIONMAY INCLUDE BUT IS  NOT LIMITED TO ASSESSMENT OF THE FEES ON THE PROPERTY TAX BILL.**

Orders to correct code violations were issued to you as the owner or person in control of the property on 01/09/2019. That notice specified a compliance due date of 02/08/2019. As of our last inspection, the district inspector reports that the violations have not been corrected.

**If you have already completed the work, please call the Inspector Terry James, at 352-4788, between , 7:00 to 9:00 a.m., or E-Mail:  terry.james@cincinnati-oh.gov. The inspector does not have information on fee invoicing, but will be glad to assist with code compliance related issues.**

Failure to correct the following violations within the time specified in this notice subjects the premises to an escalating quarterly abatement fee for each quarter the premises remains non-compliant.

| Days Out of Compliance | Base Fee | Technology Surcharge | Fin. Recovery Surcharge | Total Fee | Due Date |
|---|---|---|---|---|---|
| 646 | $125.00 | $3.75 | $1.25 | $130.00 | 11/17/2020 |

(Includes any past due fees)     **Pay This Amount :**     $494.00

**Unpaid fees may be assessed to the property tax bill for the location
and collected along with the biannual property taxes due.**

Your cooperation in correcting the code violations issued 01/09/2019, will avoid additional the escalating abatement fees that will be due each quarter as well as further code enforcement action that may include fines and penalties. Correcting the violations will assist the City of Cincinnati and your neighbors in maintaining quality property conditions and property values in your neighborhood while protecting your own investment.

*If this abatement fee to cover municipal abatement activity costs will create an undue burden based upon your circumstances, you may request suspension of the fee. To be eligible for consideration you must have a plan to correct the violations that includes a method of funding. Also, a suspension cannot be granted where unreasonably hazardous conditions are allowed to exist. You may file a request for fee suspension by completing the prescribed form and submitting the request to the Director of Buildings & Inspections. The form and instructions for completing and submitting the request are available on the Department of Buildings & Inspections website at https://www.cincinnati-oh.gov/buildings/*

---

*Department of Buildings & Inspections, 805 Central Avenue, Cincinnati Ohio, 45202  - Information Ph. 513-352-3275*